June 4, 2021

SHEILA
WALKER MEWS APARTMENTS
6225 YORK RD
BALTIMORE, MD 21212

Dear SHEILA,

I am writing in response to the Notice to Quit I received on 5/25/21. Pursuant to the Residential Lease Agreement, I am filing this grievance letter disputing the Notice.

An Affidavit of Specific Negative Averment, along with the attached enclosures, was sent certified mail and hand delivered to your office. A copy of the Affidavit and the enclosures are attached to this letter. In this Affidavit, you were requested to provide proof of claim, under penalty of perjury, rebutting the claims made in the Affidavit pertaining to the Notice to Quit. Based on the time limit elapsing without receiving proof of claim under penalty of perjury, and the principles of res judicata and stare decisis, I believe no such proof of claim exists.

For the following reasons, I am requesting that Walker Mews Apartments rescind the Notice to Quit.

Thank you for your time and consideration in this matter.

Sincerely,

JOHNNY MASON
6225 YORK RD #N418
BALTIMORE, MD 21212

Ex #B

## Example Affidavit of Specific Negative Averment

**NON-NEGOTIABLE NON-TRANSFERABLE THIS IS A PRIVATE MATTER TITLE OF ORIGIN**
**This is a permanent legal document and remains the property of the Authorized Representative and may not be reproduced without prior written permission of Authorized Representative.**
notice to the agent is notice to the principal; notice to the principal is notice to the agents
herein claimed, declared, expressed, and stated as true, correct, complete and not misleading

Non-negotiable
By special appearance
Restricted jurisdiction

State of Maryland             )
                              ) ss.
County of Baltimore           )

From Secured Party/Authorized Representative:
C/O 6225 York Road #N418
Baltimore [21212]
Maryland
Secured Party

For Respondent:
SHEILA
WALKER MEWS APARTMENTS
6225 YORK RD
BALTIMORE, MARYLAND 21212

Sent by: United States Post Office Certified Mail No. 7020 1810 0001 3599 0954 Re: Case No. **N418**, i.e. "Alleged Case"

## AFFIDAVIT OF SPECIFIC NEGATIVE AVERMENT

From the soil of Maryland the undersigned Affiant, Kaleab Ka Anpu El, one living, breathing, flesh-and-blood being, hereinafter "Secured Party," appearing in restricted jurisdiction in proper capacity with unlimited liability, possessing undiminished standing in law, as a sovereign, spiritually autonomous, sentient Man with free will, unalienable rights, and unalloyed authority for upholding said rights, and beneficiary by blood, birth, innate being, and descent of Original Jurisdiction defined and secured in law by the eternal Covenant of Secured Party with the Creator, in accord with guarantees secured, *inter alia*, by the *Unanimous Declaration*, i.e. "*Declaration of Independence*," 1776, and in accordance with Secured Party's sincerely held spiritual convictions and creed, does herewith solemnly swear, declare, and state that:

1. Secured Party can competently state the matters set forth herewith.

2. Secured Party has personal knowledge of the facts stated herein.

3. All the facts stated herein are true, correct, complete, and certain, admissible as evidence, not misleading, and if testifying Secured Party can so state.

**Plain Statement of Facts**

4. This AFFIDAVIT OF SPECIFIC NEGATIVE AVERMENT, hereinafter "ASNA," constitutes a "specific negative averment" [in accord with 28 USC Federal Rules of Civil Procedure Rule 9(a)] re alleged "Case Number: **N418**," hereinafter "Alleged Case."

5. Secured Party executes ANSA solely as authorized representative of KALEAB KA ANPU EL. Secured Party is not now, nor may Secured Party be construed as being, an accommodation party, nor a surety, for KALEAB KA ANPU EL, nor for any derivative, nor for any orthographic variation, of said name, nor for any other juristic person, and is indemnified and held harmless by Purported KALEAB KA ANPU EL in **Commercial Security Agreement** No. **700601000001085044881-231492638 SA** dated the Twenty-Seventh Day of the First Month in the year of Our Lord Two Thousand Seventeen, hereinafter "SA," from and against any and all claims, debts, legal actions, citations, orders, warrants, judgments, awards, demands, liabilities, losses, depositions, summonses, lawsuits, costs, fines, liens, levies, penalties, damages—including direct, liquidated, consequential, incidental, and otherwise— interests, and expenses whatsoever, both absolute and contingent, as are due and as might become due, now existing and as might hereafter arise, and as might be suffered by, incurred by, and imposed on KALEAB KA ANPU EL for any reason, purpose, and cause whatsoever. Copy of SA is attached herewith, made fully part hereof, and incorporated herein by reference as Attachment A.

6. As an existential, sentient, biological, spiritually autonomous Man, Secured Party:

 a. Concurs with the spirit and alleged guarantees stated in and secured by the *Unanimous Declaration*:

 We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable rights, that among these are life, liberty and the pursuit of happiness. That to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed, that whenever any form of government becomes destructive of these ends, it is the right of the people to alter or to abolish it, and to institute new government, laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their safety and happiness.;

 b. Is acting with rights granted by Life, i.e., given by the "Creator," *supra*, and upheld by all valid and just law;

 c. Is not, and may not be construed as being, a surety, nor an accommodation party, for KALEAB KA ANPU EL, nor for any kind of juristic person, *ens legis*;

 d. Claims no rights, privileges, nor immunities under limited liability, and [per 42 USC § 1994] cannot be construed as functioning in limited liability; e. Requires no bond;

 f. Notices all involved parties of Secured Party's express non-consent for being construed as consenting that Secured Party may in any manner be rendered bound by any limited-liability proceeding;

 g. Possesses a commercial and fiduciary interest in the subject matter of any proceeding based upon any legal determination rendered by any person that Secured Party is a defendant in any limited-liability proceeding, e.g. Alleged Case;

    h.    Possesses a commercial and fiduciary interest in the subject matter of any proceeding based upon any legal determination rendered by any person that KALEAB KA ANPU EL is a defendant in any proceeding, e.g. Alleged Case.

7. Secured Party is neither a juristic person, legal fiction, entity, individual, organization, association, voluntary association, joint-stock association, company, co-partnership, firm, nor order, nor is Secured Party an organized society, incorporated society, society aggregate, part of any aggregate, automatic aggregate, nor public utility aggregate.

8. Secured Party is not misrepresenting Kaleab Ka Anpu El and does not act in any manner that diminishes the unlimited-liability standing of Secured Party. I.e., Secured Party neither grants, ratifies, bargains for, gifts, sells, options, nor donates any power of appointment, special power of appointment, general power of appointment in trust, nor any general franchise, special franchise, nor elective franchise of name, character, nor Secured Party's living body for any reason, such as for any consideration, option, opting, promise, implied promise, successive promises, agreement, presumed agreement, fiction, forbearance, grace, creation, modification of legal relation, destruction of legal relation, title, titles, nor for any return promise, bargained for and given in exchange for a promise, privilege, benefit, reciprocity, nor any future interest, nor for any other purpose.

9. Secured Party neither consents nor assents that Secured Party is bound by:
   a. Any presumption that Secured Party is other than an actual, biological, and spiritual being with undiminished standing in law and sovereign character;
   b. Any actions by anyone on the basis of fictions;
   c. Any actions by anyone on the basis of frauds;
   d. The terms and conditions of any unrevealed agreement;
   e. The terms and conditions of any unrevealed express contract;
   f. The terms and conditions of any unrevealed implied contract;
   g. The terms and conditions of any unrevealed constructive contract;
   h. The terms and conditions of any alleged contract that is not executed by affidavit sworn true, correct, and complete and does not satisfy all the requisites of contract law for valid contract;
   i. Any unrevealed presumption of law;
   j. Any unrevealed presumption of fact;
   k. Any silent judicial notice;
   l. Any presumption of authority for acting against Secured Party on the basis of any alleged war powers, state of emergency, law of necessity, and the like.

10.    The correct parties concerning any alleged dispute must be accurately and legally identified and appear in court before any proceeding may commence, inasmuch as otherwise ambiguity prevails and no way exists for knowing who is involved with whom, nor the nature of any such alleged involvement, rendering said proceeding and all matters connected therewith and pertaining thereto void for vagueness as per 46 AmJur 2d, Judgments:

100 Parties. A judgment should identify the parties for and against whom it is rendered, with such certainty that it may be readily enforced, and a judgment which does not do so may be regarded as void for uncertainty....

11. Secured Party is unaware of the manner in which any of the below-named assemblages of letters, hereinafter "Unidentified Entities," is defined in law:
STATE OF MARYLAND
UNITED STATES
UNITED STATES OF AMERICA
US
U.S.
USA
U.S.A.
US GOVERNMENT
UNITED STATES GOVERNMENT
THE GOVERNMENT OF THE UNITED STATES
THE PEOPLE OF THE STATE OF MARYLAND
THE BALTIMORE CITY DISTRICT OR CIRCUIT COURT
BROOH D. HAILU, ESQ.
SHEILA
WALKER MEWS APARTMENTS
STATE BAR OF MARYLAND
ALL BAR ASSOCIATIONS
ALL SUB-AGENCIES AND DIVISIONS OF THE ABOVE

12. Secured Party is unaware concerning whether any of the above-referenced Unidentified Entities is legally established in any identifiable legal and commercial domicile, and is unaware whether any particular Unidentified Entity is legally defined as a:
    a. Living, breathing, sentient being;
    b. Corporation;
    c. Partnership;
    d. Limited partnership;
    e. General partnership;
    f. Sole proprietorship;
    g. Trust;
    h. Estate;
    i. Business;
    j. Association;
    k. Incorporated association;
    l. Unincorporated association;
    m. Other.

13. Until and unless Secured Party is presented with incontrovertible proof otherwise, Secured Party denies that any Unidentified Entity:
    a. Exists;
    b. Is proved on the record as existing;
    c. Is legally defined on the record;
    d. Is solvent:
    e. Has "capacity to sue or be sued or...sue or be sued in representative capacity";
    f. Is appearing in court re Alleged Case;
    g. Can appear in court re Alleged Case;
    h. Is bound by any bona fide, enforceable contract with any other alleged party re Alleged Case.

14. Until and unless Secured Party is presented with incontrovertible proof otherwise, Secured Party asserts for and on the record that the fictitious business name Tradename Trademark, i.e., KALEAB KA ANPU EL and every derivative and orthographic variation of KALEAB KA ANPU EL:
    a. Is bankrupt;
    b. May neither sue nor be sued;
    c. Is neither a party capable of appearing in court nor a party bound by any contractual relationship with any Unidentified Entity.

15. Based upon the above-referenced bankrupt and civilly dead status of KALEAB KA ANPU EL, no party nor person may proceed in any manner against KALEAB KA ANPU EL, nor against any derivative nor orthographic variation of KALEAB KA ANPU EL, for want of any capacity for stating a claim upon which relief can be granted.

16. Secured Party further states and asserts for the record that:
    a. Neither Kaleab Ka Anpu El, nor any derivative nor orthographic variation of Kaleab Ka Anpu El, is the alleged defendant in Alleged Case;
    b. Neither KALEAB KA ANPU EL, nor any derivative nor orthographic variation of KALEAB KA ANPU EL, is the alleged defendant in Alleged Case;
    c. Secured Party does not consent that any proceedings of any kind may transpire involving the use of either of the above-referenced names, i.e., neither Kaleab Ka Anpu El nor KALEAB KA ANPU EL, nor any derivatives nor orthographic variations of said names, in the absence of proof by every involved party re Alleged Case of each and every element alleged herein, and proof of the existence of full disclosure, mutual good faith, free consent, capacity for contracting, capacity for suing and being sued, as well as proof of the absence of fraud, duress, malice, undue influence, mistake, valuable consideration exchanged, and every other element of contract law that is essential for forming a valid, bona fide contract enforceable at law;
    d. Secured Party may not be construed as being involved in an imaginary dispute between non-existent and non-appearing entities;
    e. No Unidentified Entity possesses, nor can possess, jurisdiction over Secured Party, nor Secured Party's property, nor Secured Party's rights, and the issue of jurisdiction cannot be waived;
    f. The record must be corrected re this matter immediately;
    g. All parties whatsoever are estopped henceforth from acting against any of Secured Party's rights and property in any manner re Alleged Case.

17. Secured Party's unlimited commercial liability is a genuine material fact that must be resolved before any proceedings of any kind may transpire that purportedly involves Secured Party, and which bars all capacity for construing that Secured Party is bound by any summary judicial processes re Alleged Case.

18. Secured Party does not accept, does not enter into contract with, does not consent, and does not assent concerning being regarded as participatory within, cannot be lawfully considered as contractually bound by, and expressly renounces, disavows, and repudiates any and every presumption that any nexus exists between Secured Party and any Unidentified Entity, nor any principal, agency, sub-function, municipal corporation, branch, section, department, division, agent, officer, official, representative, employee, nor any actor thereof.

19. Secured Party further states and alleges for the record that, if Alleged Case is deemed as being a civil matter, each and every one of the following essential elements must be established on the record and provided Secured Party by each and every alleging party, by means of affidavit sworn true, correct, and complete, in compliance with all terms, conditions, restrictions, requirements, demands, and criteria of ASNA, establishing on the record:
    a. The underlying contract in dispute, entered into by all interested parties sworn true, correct, and complete;
    b. Identification with particularity of the terms and conditions of the disputed contract concerning which Secured Party is allegedly in default;
    c. All commercial paperwork, bookkeeping, and accounting substantiating every allegation, executed under affidavit sworn true, correct, and complete by parties staking defined commercial liability on the validity, veracity, accuracy, relevance, and verifiability of each and every assertion made by each particular affiant;
    d. Identification with particularity of all creditors concerning whom Secured Party allegedly owes a defined sum certain amount of money based on Secured Party's alleged default on the foundational contract in dispute;
    e. An itemization of parties concerning whom Secured Party must allegedly render corresponding specific performance based on Secured Party's alleged default on the foundational contract in dispute;
    f. The remedy and relief sought, defined with particularity;
    g. Proof of each alleging party's authorization for acting against Secured Party on the basis of Secured Party's alleged default on the foundational contract in dispute.

20. Any criminal action against Secured Party must be instigated by affidavit sworn true, correct, and complete in compliance with all terms, conditions, restrictions, requirements, demands, and criteria of ASNA and establishing on the record:
    a. The appearance, existence, legal identity, address, legal domicile, commercial domicile, jurisdiction, and contractual nexus with Secured Party of every alleged interested party;
    b. Every allegation, remedy, and relief sought, defined with particularity, supported and substantiated by affidavit sworn true, correct, and complete;
    c. Proof of lawful personam jurisdiction over Secured Party;
    d. Proof of any involved court's lawful subject matter jurisdiction;
    e. Charging affidavits re every allegation and party alleging wrongdoing against Secured Party, sworn true, correct, and complete;
    f. Verified warrants of probable cause executed upon affidavits sworn true, correct, and complete;
    g. Complete and valid commercial paperwork, executed by affidavit sworn true, correct, and complete, "particularly describing the place to be searched, and the persons or things to be seized," as purportedly mandated by the Fourth Article of Amendment, "Fourth Amendment," of the Constitution of the United States of America, 1787, Bill of Rights, 1781, and the Constitution of the State of Maryland;
    h. Proof of the alleging party's authorization for acting against Secured Party.

21. Any aspect of ASNA that is "construed" in any manner other than in accordance with the import and significance intended by Secured Party herewith is null and void and of no force and effect. Secured Party intends that the meaning of words used herein accord

with common usage and be acted upon in accordance with Secured Party's declarations and intent and not per the intent of any other being, as per the maxim of law, "It is to the intention that all law applies." All disputes arising concerning the intent, import, and significance of any terms and conditions of ASNA must be resolved by requesting that Secured Party provide, by affidavit, clarification of any aspect that is "construed" as other than the meaning and intent of Secured Party as set forth herein. Any such requester must define with particularity every word and phrase used in said requester's request. All burden of proof validating any matter construed other than as Secured Party asserts herein falls on the party acting against Secured Party.

22. Secured Party herewith provides notice of Secured Party's specific negative averment, non-consent, and non-assent concerning every presumption that Secured Party is in any manner contractually bound by any alleged terms, conditions, consequences, and ramifications of any alleged contract, agreement, law form, and jurisdiction connected with:
    a. United States, 1871, State of Maryland, and any principal, agent, officer, official, representative, employee, actor, assignee, real party in interest, and real party of interest thereof;
    b. Being legally and politically regarded as a "citizen of the United States" as referenced in the so-called Fourteenth Amendment of the Constitution of the United States;
    c. Being regarded as a co-trustee of any *cestui que* trust as might allegedly exist, *inter alia*, on any basis such as:
       i. Creation of the corporate United States, as originally chartered by the Legislative Act of February 21, 1871, Forty-first Congress, Session III, Chapter 62, page 419;
       ii. The creation of State of Maryland;
       iii. Being regarded as a "citizen of the United States" as referenced in the 14th Amendment of the Constitution of the Untied States;
       iv. Alleged existence and operation of the above-referenced General Partnership between Maryland Republic, and State of Maryland.
    d. Being regarded as a slave;
    e. Being regarded as an enemy;
    f. Being regarded as a surety for any juristic person.
23. In the absence of knowledge, *scienter*, concerning the below-enumerated unknown elements, Secured Party cannot competently and justly participate in any proceeding whatsoever re Alleged Case:
    a. The jurisdiction of law re Alleged Case;
    b. The jurisdiction of the alleged court, i.e. "BALTIMORE CITY DISTRICT OR CIRCUIT COURT";
    c. Whether Alleged Case is a proceeding in time of peace;
    d. Whether Alleged Case is a proceeding in time of war;
    e. Whether Secured Party is regarded as an enemy;
    f. Whether commerce may be permitted between belligerents;
    g. Whether the alleged parties re Alleged Case are of well-meaning intent;
    h. Numerous other elements that must be disclosed, known, and understood for the occurrence of a sane, lawful, and just proceeding.

24. Inasmuch as the law cannot compel impossibilities, Secured Party may not be compelled into participating in any proceeding that may possess a hidden agenda that might

damage Secured Party's "unalienable rights," i.e., the "life, liberty and pursuit of happiness" with which Secured Party is "endowed" by Secured Party's "Creator," and Secured Party cannot be regarded as bound by any alleged agreement that is not founded on good faith, mutual free consent, genuine meeting of the minds, absence of fraud, malice, duress, undue influence, and mistake, with identified lawful object and bona fide valuable consideration pledged by the parties involved in any alleged contract.

25. Any rebuttal of ASNA by Respondent must be executed in the manner of ASNA, using Respondent's Christian name for signature, executed true, correct, and complete, in red ink, with red-ink thumbprint of Respondent's right hand, and delivered so that Secured Party receives the rebuttal within one (1) day of receipt of Respondent's receipt of ASNA.

26. In the event Secured Party receives no rebuttal of ASNA from Respondent within the above-stipulated time period of one (1) day, Respondent's default is established on the record signifying Respondent's confession and consent of judgment that Respondent concurs with every provision and specific negative averment in ASNA and is devoid of any valid claim whatsoever against any interests of Secured Party.

27. All statements and demands made herein are established for and on the record of any court, legal proceeding, commercial involvement, and any other undertaking that might be involved with the subject matter contained herein.

## Verification

28. The undersigned affiant, Kaleab Ka Anpu El, i.e. "Secured Party," does herewith assert and declare on Secured Party's unlimited liability that Secured Party executes ASNA with sincere intent, that Secured Party can competently state the matters set forth herein, that the contents are true, correct, and complete in accordance with Secured Party's knowledge, understanding, and sincerely held spiritual convictions and creed.

Autograph:
Affiant's right thumbprint

_____
Autograph of Kaleab Ka Anpu El, living principal

Enclosures/Attachments:
Attachment A: <u>Commercial Security Agreement</u>
Attachment B: <u>UCC-1 Financing Statement #170425-1321000</u>
Attachment C: <u>Copy of Notice noted "Accepted for Value"</u>

ANAND K. YADAVA
Notary Public
State of Maryland
My Commission Expires 07/27/23

State of Maryland )
 ) ss   Jurat
County of Baltimore )

Subscribed and sworn to before this agent, ANAND K. YADAVA, a notary public in and for the County of Baltimore, State of Maryland, on this 31 day of MAY, 2021 by Kaleab Ka Anpu El; who proved to this agent on the basis of satisfactory evidence that Kaleab Ka Anpu El executes the within document, and swears, states, and declares that Kaleab Ka Anpu El autographs said within document in capacity of being the living principal, attorney in fact, and authorized representative for the registered trade-names/trademarks, KALEAB KA ANPU EL TM, [KALEAB KA ANPU EL]TM,

[KA ANPU EL: KALEAB DJED]TM, and any and all orthographic variations thereof.



Ex #C

**Commercial Security Agreement # 70060100000108504488-231492638 SA**

This non-negotiable and non- transferable Security Agreement supplements and controls previous such agreements between the same Parties, and is made and entered this 27 day of January, 2017 by and between WILLIE LIGHTSY III hereinafter "Debtor" (VIRGINIA Certificate of Live Birth # 145-87-063437 and Organization # 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), and Kale'ab Djed Ka Anpu El hereinafter "Secured Party", Creditor Identification #231492638. The Parties acknowledge they agree to be bound by the terms of this Commercial Security Agreement and are identified as follows:

| DEBTOR: | SECURED PARTY: |
|---|---|
| WILLIE | Kale'ab Djed |
| LIGHTSY III, a Legal Entity | Ka Anpu El, a Male |
| | 1800 East |
| 1800 East | Northern |
| Northern Pkwy | Pkwy Suite |
| Suite 28046 | c/o 28046 |
| Baltimore | Baltimo |
| , Maryland 21239 | re, Maryland 21239 |
| Organization Number: 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 | Employer Identification Number: 231492638 |

**AGREEMENT**

NOW, THEREFORE, the Parties agree as follows:

Debtor hereby grants Secured Party, who deems himself insecure, a security interest in the Collateral described generally herein or specifically on attached Schedule(s), hereinafter referred to as "Collateral", to secure all Debtor's property, as well as all income from every source, and all direct and indirect, absolute or contingent, due or to become due, now existing or hereafter arising, presumed or actual, parol or expressed public indebtedness and liabilities held by Debtor, to Secured Party in consideration for Secured Party providing certain things and accommodations for Debtor including, but not limited to:

1. the Secured Party constituting the source, initial description, origin, substance, labor, sentient existence, exercise of faculties for, and being the basis from which the existence of the Debtor was derived, and the basis upon which the Debtor is able to act as an agent to interact, contract, and exchange goods, services, obligations, and liabilities in commerce with other artificial entities, and is able to function as a transmitting utility through traffic, i.e. serving as a pipeline for the transmission of goods, services, chattel property, and papers in commercial activity;
2. the Secured Party signing by accommodation as the authorized representative of the Debtor, without immediate consideration, for the Debtor, in all cases whatsoever where the signature of the Debtor is, will or has been required, will retain the right to make sufficient claims to secure such indebtedness until satisfied in whole;
3. the Secured Party issuing a binding commitment to extend credit or to extend immediately available credit, whether or not drawn upon and whether or not reimbursed in the event of difficulties in collection; and
4. the Secured Party providing the security for payment of all sums due or owing, or to become due or owing, by the Debtor on every public contract entered by the Debtor.

Debtor declares it is a legal entity recognized as such, and has rights and privileges recognized under the laws of the United States, as has been the case since its creation in 1987. All legal means to protect the security interest being established by this Agreement, nunc pro tunc from October 7, 1987, will be used by the Debtor when necessary; and all support needed by the Secured Party to protect his security interest in the collateral identified herein, will be provided by the Debtor.

Execution of this Security Agreement incorporates a promise that the Debtor will execute such commercial forms, including but not limited to such Financing Statements as may be necessary, to assure the Secured Party's interest is perfected. The security interest established by this Agreement will continue until the Secured Party is relieved of all liability associated with said services provided to the Debtor, and until all owing and due consideration to the Secured Party has been delivered, regardless of whether the Collateral identified in this Agreement is in the possession of the Debtor or the Secured Party.

Debtor warrants that Secured Party's claim against the Collateral is enforceable according to the terms and conditions expressed therein, and according to all applicable laws promulgated for the purpose of protecting the interests of a creditor against a debtor. Debtor also warrants that it holds good and marketable title to the Collateral, free and clear of all actual and lawful liens and encumbrances except for the interest established herein, and except for such substantial interest as may have been privately established by agreement of the parties with full attention to the elements necessary to establish a valid contract under international contract law. Public encumbrances belonging to the Debtor, against the Collateral, shall remain secondary to this Agreement, unless registered prior to the registration of Secured Party's interest in the same Collateral, as is well-established in international commercial law. Debtor specifically authorizes Secured Party to file such legal notices as he deems necessary to secure his interest in the collateral.

For valuable consideration, Debtor hereby expressly agrees and covenants, without benefit of discussion, and without division, that Debtor holds harmless and undertakes the indemnification of Secured Party, nunc pro tunc October 7, 1987, from and against any and all claims, legal actions, orders, warrants, judgments, demands, liabilities, losses, depositions, summonses, lawsuits, costs, fines, liens, levies, penalties, damages, interests, and expenses whatsoever, both absolute and contingent, as

are due and as might become due, now existing and as might hereafter arise, and as might be suffered/incurred by, as well as imposed on Debtor for any reason, purpose and cause whatsoever.

## GENERAL PROVISIONS

Possession of Collateral: Collateral or evidence of Collateral may remain in the possession of the Debtor, to be kept at the address given in this Agreement by the Debtor or such other place(s) approved by Secured Party, and notice of changes in location must be made to the Secured Party within ten (10) days of such relocation. Debtor agrees not to otherwise remove the Collateral except as is expected in the ordinary course of business, including sale of inventory, exchange, and other acceptable reasons for removal. When in doubt as to the legal ramifications for relocation, Debtor agrees to acquire prior written authorization from the Secured Party. Debtor may possess all tangible personal property included in Collateral, and have beneficial use of all other Collateral, and may use it in any lawful manner not inconsistent with this Agreement, except that Debtor's right to possession and beneficial use may also apply to Collateral that is in the possession of the Secured Party if such possession is required by law to perfect Secured Party's interest in such Collateral. If Secured Party, at any time, has possession of any part of the Collateral, whether before or after an Event of Default, Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral, if Secured Party takes such action for that purpose as deemed appropriate by the Secured Party under the circumstances.

Proceeds and Products from Collateral: Unless waived by Secured Party, all proceeds and products from the disposition of the Collateral, for whatever reason, shall be held in trust for Secured Party and shall not be commingled with any other accounts or funds without the consent of the Secured Party. Notice of such proceeds shall be delivered to Secured Party immediately upon receipt. Except for inventory sold or accounts collected in the ordinary course of Debtor's public business, Debtor agrees not to sell, offer to sell, or otherwise transfer or dispose of the Collateral, nor to pledge, mortgage, encumber, or otherwise permit the Collateral to be subject to a lien, security interest, encumbrance, or charge, other than the security interested established by this Agreement, without the prior written consent of the Secured Party.

Maintenance of Collateral: Debtor agrees to maintain all tangible Collateral in good condition and repair, and not to commit or permit damage to or destruction of the Collateral or any part of the Collateral. Secured Party and his designated representatives and agents shall have the right at all reasonable times to examine, inspect, and audit the Collateral wherever located. Debtor shall immediately notify Secured Party of all cases involving the return, rejection, repossession, loss, or damage of or to the Collateral; of all requests for credit or adjustment of Collateral, or dispute(s) arising with respect to the Collateral; and generally of all happenings and events affecting the Collateral or the value or the amount of the Collateral.

Compliance with Law: Debtor shall comply promptly with all laws, ordinances, and regulations of all governmental authorities applicable to the production, disposition, or use of the Collateral. Debtor may contest in good faith any such law, ordinance, or regulation without compliance during a proceeding, including appropriate appeals, so long as Secured Party's interest in the Collateral, in Secured Party's opinion, is not jeopardized. Secured Party may, at his option, intervene in any situation that appears to place the Collateral in jeopardy.

Public Disputes: Debtor agrees to pay all applicable taxes, assessments and liens upon the Collateral when due, provided that such taxes, assessments and liens are proved to be superior to the lawful claim established by this Agreement and subsequently perfected by the Secured Party by appropriate registration. In the event Debtor elects to dispute such taxes, assessments and liens, Secured Party's interest must be protected at all times, at the sole opinion of the Secured Party, who may, at his option, intervene in any situation that appears to jeopardize Secured Party's interest in the Collateral. Debtor may elect to continue pursuit of dispute of such taxes, assessments, and liens, only upon production of a surety bond by public claimant(s), in favor of the Secured Party, sufficient to protect Secured Party from loss, including all costs and fees associated with such dispute. Should public judgment against the Debtor result from such dispute, Debtor agrees to satisfy such judgment from its accounts established and managed by the United States or its subdivisions, agents, officers, or affiliates, so as not to adversely affect the Secured Party's interest in the Collateral.

## SUBORDINATION OF DEBTOR'S DEBTS TO SECURED PARTY

Providing Secured Party, subsequent to the execution of this Agreement, perfects his security interest in the Collateral by appropriate registration, Debtor agrees that its indebtedness to the Secured Party, whether now existing or hereafter created, shall have priority over unregistered claims that third parties may raise against Debtor or the Collateral, whether or not Debtor becomes insolvent. Debtor hereby expressly subordinates any claim Debtor may have against Secured Party, upon any account whatsoever, to the claim Secured Party has or will have against the Debtor.

If Secured Party so requests, all notes or credit agreements now or hereafter established evidencing debts or obligation of Debtor to third parties, shall be marked with a legend that the same are subject to this Agreement and shall be delivered to Secured Party. Debtor agrees, and Secured Party hereby is authorized, in the name of the Debtor, to execute and file such

financing statements and other commercial statements, as Secured Party deems necessary or appropriate to perfect, preserve, and enforce his rights under this Agreement.

## DEFAULT

The following shall constitute Event(s) of Default hereunder:
1. failure by the Debtor to pay a debt secured hereby when due;
2. failure by the Debtor to perform an obligation secured hereby when required to be performed;
3. breach by the Debtor of a warranty contained in this Agreement;
4. evidence that a statement, warranty, or representation made or implied in this Agreement by Debtor, is false or misleading in any material respect, either now or at the time made or furnished;
5. evidence that this Agreement or a document of title is void or ineffective;
6. dissolution or termination of Debtor's existence as a legal entity, the insolvency of Debtor, the appointment of a receiver for all or any portion of Debtor's property, an assignment for the benefit of public creditors, or the commencement of proceedings under bankruptcy or insolvency laws by or against Debtor;
7. commencement of foreclosure, whether by action of a tribunal, self-help, repossession, or other method, by a creditor of Debtor against the Collateral;
8. garnishment of Debtor's deposit accounts or employment.

Cure of Default: If a fault or dishonor under this Agreement is curable through an account held by Debtor but managed by the United States or one of its subdivisions, agents, officers, or affiliates, such fault or dishonor may be cured by the Debtor with authorization by Secured Party; and upon advice by the fiduciary that the fault or dishonor has been cured, no Event of Default will have occurred. A dishonor under this Agreement, initiated by third party intervention, will not cause a default if such intervention is challenged by Debtor by its good faith effort to confirm or disprove the validity or reasonableness of a public claim which is the basis of the public creditor's proceeding; but Debtor must, in that event, deposit such surety with Secured Party as is necessary to indemnify the Secured Party from loss.

Acceleration: In the Event of Default, Secured Party may declare the entire indebtedness, immediately due and payable without notice.

Liquidation of Collateral: In the Event of Default, Secured Party shall have full power to privately or publicly sell, lease, transfer, or otherwise deal with the Collateral or proceeds or products therefrom, in his own name or in the name of the Debtor. All expenses related to the liquidation of Collateral shall become a part of the Debtor's indebtedness. Secured Party may, at his discretion, transfer part or all of the Collateral to his own name or to the name of his nominee.

Rights and Remedies: The Secured Party shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code as it has been adopted in the State where part or all of the Collateral is located or presumed to be located, including but not limited to, the right to proceed with self-help with or without a public court or tribunal. Rights and remedies available to Secured Party may be exercised singularly or jointly and in all venues and jurisdictions concurrently at the sole discretion of the Secured Party.

## MISCELLANEOUS PROVISIONS

Amendments: This Agreement, together with all related documents, present and future, constitutes the entire understanding and agreement of the Parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless expressed in writing and signed by both Parties.

Applicable Law: The governing law of this Agreement is the agreement of the Parties, supported by the Uniform Commercial Code as adopted by the legislature of the State of Maryland, international contract law, the unwritten Law Merchant as practiced before the Uniform Commercial Code was promulgated, and applicable maxims of law.

Expenses: Debtor agrees to pay upon demand, from such accounts as Debtor may have, all Secured Party's costs and expenses, including reasonable attorney's fees and other expenses incurred by the Secured Party to defend or enforce the provisions of this Agreement.

Indebtedness: The word "indebtedness" means the indebtedness evidenced by this Agreement as a claim against the Debtor and all its present and future possessions identified in this Agreement as Collateral and all public obligations, debts and liabilities ascribed to Debtor through its contracts and agreements, whether expressed or implied, known or unknown, or actual or constructive, that are with the United States or its subdivisions, agents, officers, affiliates or other public entities; and all claims made by Secured Party against Debtor, whether existing now or in the future, whether they are voluntary or involuntary, due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated, regardless of whether Debtor is or may be liable individually or jointly, or is obligated as, or beneficiary of, a surety or accommodation party.

Private and non-negotiable between the parties     Page 3 of 4

DEBTOR: WILLIE LIGHTSY III     Secured Party: Kale'ab Djed Ka Anpu El

Related Documents: The phrase "related documents" means all promissory notes, credit agreements, loan agreements, guaranties, security agreements, mortgages, deeds of trust, applications, accounts, licenses, policies, permits, identification cards, account cards, receipts, forms, and all other documents and instruments that Debtor or its surety has or will execute in connection with the Debtor's total indebtedness.

Notices: Except for revocation notices by Debtor, all notices required to be given by either Party under this Agreement, shall be in writing and shall be effective when actually delivered or when deposited with the United States post office or a nationally recognized courier service, first class postage prepaid, addressed to the Party to whom the notice is to be given at the address shown on this Agreement or to such other address as either Party may designate to the other in writing.

Severability: If one or more provisions of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court of competent jurisdiction finds that one or more provisions of this Agreement are invalid or unenforceable, but that by limiting such provision(s) it would become valid or enforceable, such provision(s) shall be deemed to be written, construed, and enforced as so limited. In the event that such a finding and limitation causes damage or hardship to either Party, the Agreement shall be amended in a lawful manner to make all Parties whole.

Waiver of Contractual Right: The failure of either Party to enforce one or more provisions of this Agreement shall not be construed as a waiver or limitation of that Party's right to subsequently enforce and compel strict compliance with every provision of this Agreement. Secured Party shall not be deemed to have waived rights under this Agreement unless such waiver is given in writing and signed by Secured Party. No delay or omission on the part of Secured Party in exercising a right shall operate as a waiver of such right or any other right. A waiver by Secured Party of a provision of this Agreement shall not prejudice or constitute a waiver of Secured Party's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Secured Party, nor any course of dealing between Secured Party and Debtor shall constitute a waiver of Secured Party's rights or of Debtor's obligations under this Agreement as to future transactions. Whenever the consent of Secured Party is required under this Agreement, the granting of such consent by Secured Party in one instance shall not constitute consent over the whole.

Ambiguities and Interpretation: Each Party acknowledges receipt of this Agreement, has had the opportunity to have counsel review this Agreement and agrees that any rule of construction claiming ambiguities are to be resolved against the drafting Party and shall not apply in the interpretation of this Agreement or its amendments. All statements in this instrument are important to the Parties. Misunderstandings have been resolved prior to execution.

Authority to Represent: A signer of this Agreement on behalf of a legal entity certifies that he has the authority to sign this Agreement and that this transaction has been duly authorized by such entity.

Gender. All references within this Agreement to a specific gender, include the other.

## SIGNATURES

Secured Party accepts all signatures in accord with the Uniform Commercial Code and acknowledges Debtor's signature as representative of all derivations thereof.

_WILIE LIGHTSY III_              _Kale'ab El, Ka Anpu El_

WILLIE LIGHTSY III, DEBTOR, a Legal Entity     Kale'ab Djed Ka'Anpu El, Secured Party, a Male

See attached: Schedule A

Maryland                          )
                                  ) ss.         ACKNOWLEDGEMENT
Baltimore     County      )

For the purpose of verification only, on the 27 day of January 2017, Kale'ab Djed Ka Anpu El personally appeared before me and proved to me on the basis of satisfactory evidence to be the person whose name is subscribed hereto and acknowledged to me that he or she executed the same. Subscribed before me this day. Witness my hand and seal this 27 day of January 2017.

_Anand K Tadav_
NOTARY SIGNATURE

# UCC-1

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Kaleab Ka Anpu El          4434490515

B. E-MAIL CONTACT AT FILER (optional)
wlightsy@gmail.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Kaleab Ka Anpu El
1800 E. Northern Pkwy Suite 28046
Baltimore, MD 21239

MD DEPT. OF ASSESSMENTS & TAXATION
170425-1321000   NS
Lapse Date: 04/25/2022
Date: 4/25/2017
Time: 1:21 PM
Page Count: 1 Pg
Debtor Count: 1
Filing Fees: $25.00
Electronic Records Access: $0.00
Total: $25.00
Order ID#: 15953608

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| WILLIE LIGHTSY III | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1800 E. Northern Pkwy Suite 28046 | Baltimore | MD | 21239 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Ka Anpu | Kale'ab | Djed | El |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1117 Greenmount Ave | Baltimore | MD | 21202 | US |

4. COLLATERAL: This financing statement covers the following collateral:

NOTICE: In accordance with USC - Property – This is the entry of the Debtor in the Commercial Registry as a transmitting utility and the following property is hereby registered in the same as a public notice of a commercial transaction: Certificate of Live Birth # 145-87-063437; Employer Identification #231492638; UCC Contract Trust Account #70060100000108504488-231492638; All property is accepted for value and is exempt from Levy. Adjustment of this filing is from Public Policy HJR-192 of June 5, 1933, Public Law 73-10 and MD CODE, COM LAW § 1-104. All proceeds, products, accounts, fixtures and the orders therefrom are released to the Debtor to serve as collateral for the Creditor.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

(Rev. 04/20/11)


Ex #E

Law Offices of
## MARKEY & ORSI

Stephen A. Markey, III
*steve@markeyorsilaw.com*
Amy M. Orsi
*amy@markeyorsilaw.com*
Brooh D. Hailu
*brooh@markeyorsilaw.com*

1426 E. Joppa Road
Towson, Maryland 21286-3004
Telephone (410) 583-0755
Facsimile (410) 583-0757
e-mail: info@markeyorsilaw.com
website: www.markeyorsilaw.com

Harford County
(410) 583-0755
(800) 9270250

[Handwritten stamp overlay:] Non-Negotiable Non-Transferable Charge Back — Office Holder - Secretary of the Treasury — Accept for value all related endorsements in accordance with UPC LAW HJR 192 of June 5, 1933, and Public Law 73-10. Charge my Personal UCC Contract Trust Account 70060100000108504488-231492638 for the registration fees and command the memory of the account to charge the same to the Debtor's Order, or your Order. Employer Identification # 231492638 — Bond # G55265976 Pre-Paid — Preferred Stock — Priority — Exempt from Levy — Posted: Certified Account — Invoice # KJK 20210531-01   Date 5/31/21

May 25, 2021

Johnny Mason
6225 York Road
Apt. N418
Baltimore, Maryland 21212

Sent via: First-Class Mail on May 25th, 2021. ___JS_____ (Initial)

My Client/Your Landlord: **Walker Mews Apartments**
Re: **NOTICE TO QUIT and VACATE/TERMINATION OF TENANCY**

Dear Tenant(s),

    I represent your landlord in regards to your tenancy at Premises listed above. This letter constitutes statutory notice of the termination of your lease and tenancy, <u>effective **July 31, 2021**</u> ("Effective Date"). This termination action is brought under *MD Code, Real Property,* § 8-402.1 and being instituted as a result of you, your household members, and/or guest violations of Sections 6, 10(b), 13, 14, 19, and 24 of your Residential Lease Agreement. Based upon the lease violations further described below and upon this notice, you should vacate the Unit and return the keys to management on or before the above Effective Date.

    Your lease and tenancy are hereby terminated for the following reasons:

1. Persons not listed on your lease as authorized residents are illegally residing in your unit.
2. You have been warned multiple times by management about the fact that you may not allow other persons to reside in your unit.
3. During routine inspections, inspectors/management found two twin beds and an air matters in the unit, suggesting that multiple people are residing and

**Walker Mews Apartments**
6225 York Road
Baltimore, Maryland 21212

Phone: 410-323-8507                Fax: 410-435-7442
TTY: 1-800-735-2258

---

06/8/21               *Conditionally Accepted*

Johnny Mason
6225 York Road N418
Baltimore, Maryland 21212

RE: **Lease Termination Notice**

Dear Mr. Mason:

The letter that I received from you was sent to my lawyer's office and yesterday I received a response back from them stating that the paperwork that was provided by you to me was not valid under any circumstances and that the termination date for July 31, 2021 will stand.

So please have all items removed from the premises on this date and turn all keys into the office. This date is on a Saturday and I will need to have everything in the office by Monday morning at 9:00 am.

Sincerely,

Shelia Riggins
Property Manager

*Walker Mews Apartments* is an Equal Housing Opportunity provider and does not discriminate on the basis of disability in the admission or access to, or treatment or employment in, its federally assisted programs and activities. A senior executive has been designated to coordinate compliance with the nondiscrimination requirements contained in the Department of Housing and Urban Development's regulations implementing Section 504 (24 CFR, part 8 dated June 2, 1988). You may address your request for review or reconsideration to: Fair Housing Officer, Related Management Company, LP, 423 W. 55th St, 9th Fl. NY, NY 10019, (212) 319-1200, NY TTY 1-800-662-1220.

6/8/21

Sheila Riggins
Walker Mews Apartments
6225 York Rd
Baltimore, MD 21212

RE: N418

On June 8, 2021, I received a notice from your office. A copy of the notice marked "Conditionally Accepted" is attached to this letter.

In your notice, several claims were made against the facts and evidence previously sent to your office. I conditionally accept these claims upon receiving proof of claim, under penalty of perjury, that Walker Mews Apartments has the capacity, under law, to collaterally attack the facts and evidence previously sent to your office, properly rendered and properly brought solely for the purpose of public notification and execution, and then come into this dispute and attack it on a collateral basis. I also conditionally accepts these claims upon receiving proof of claim, under penalty of perjury, that the Baltimore City District or Circuit Court has subject matter jurisdiction invoked to hear a collateral attack made by Walker Mews Apartments. Furthermore, I conditionally accept your claims upon receiving proof of claim, under penalty of perjury, that this notice containing a collateral attack does not violate the Full Faith and Credit Clause, the Contract clause, the Reserved Powers clause, and the Due Process and Equal Protection clause of the US Constitution. Lastly, I conditionally accept the response upon receiving proof of claim, under penalty of perjury, that this notice does not violate 18 USC 242 of Federal Law. Based on the response made by Walker Mews Apartments, the principles of res judicata, stare decisis, and the aforementioned clauses and Federal law, I clearly believe that no such evidence exists.

Furthermore, Walker Mews Apartments has willfully failed and refused to dispute, rebut, or even acknowledge the facts and evidence previously sent to your office. Walker Mews Apartments has not raised a claim of a due process violation, fraudulent facts or evidence, or a lack of jurisdiction as far as settlement is concerned. Without receiving proof of claim, under penalty of perjury, I am entitled to judgment by law.

For the following reasons, I am requesting Walker Mews Apartments provide proof of claim under penalty of perjury. If no proof of claim is provided, I am requesting that Walker Mews Apartments rescind the Notice to Quit and refrain from making anymore collateral attacks based on the principle of estoppel.

Thank you for your time and consideration.

*[signature: Mason]*

Johnny Mason
6225 York Rd #N418
Baltimore, MD 21212